IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHOPMEN'S LOCAL NO. 502          :          CIVIL ACTION
PENSION PLAN, et al.             :
                                 :
        v.                       :
                                 :
PENCOYD IRON WORKS, INC.,        :          NO. 25-3411
et al.                           :

MEMORANDUM

Bartle, J.                                        June 4, 2026

Plaintiffs Shopmen's Local No. 502 Pension Plan and its Trustees have sued the defendants to recover payments for withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1399 and 1451.  The gist of the first Amended Complaint is that in the fall of 2024 defendant Pencoyd Iron Works, Inc. ("Pencoyd") notified plaintiffs of its planned cessation of its fabrication operations.  On January 27, 2025, plaintiffs demanded that Pencoyd fulfill its resulting obligation to pay plaintiffs $327,154.  Pencoyd has failed to do so.  Plaintiffs assert that defendants James Heldring, J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC, as part of the controlled group of Pencoyd, are also liable for the payments due.  29 U.S.C. § 1301(a)(14).

These five defendants have all moved to dismiss the first Amended Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and under Rule 8(a) for failure to meet its pleading requirements.

I

Defendants first challenge this court's subject matter jurisdiction under Rule 12(b)(1) based on the plaintiffs' lack of standing.  A challenge to standing usually is one testing the court's jurisdiction.  See Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007); see also Potter v. Cozen & O'Connor, 46 F.4th 148, 153 (3d Cir. 2022).  To have standing, a party must establish that there is an injury in fact which is "concrete and particularized" and "actual or imminent," that the injury is "fairly traceable to the challenged action of the defendant," and that it is likely "that the injury will be redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (citation modified).  The defendants' attack on standing is a facial one as it focuses solely on the allegations in the first Amended Complaint.  See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632-33 (3d Cir. 2017).  In reviewing a facial attack, the court

-2-

may consider "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).

A Rule 12(b)(6) motion challenges the legal sufficiency of the claim, and the review is limited to the complaint itself, any undisputed documents integral to the complaint, and facts of which the court may take judicial notice.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  The court must accept as true all well pleaded facts in considering both Rule 12(b)(6) and facial challenges to standing under Rule 12(b)(1) motions.  In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d at 633.

As to Rule 8(a), the allegations in the complaint must meet the plausibility standard articulated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  See also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  A complaint is typically only dismissed as a "shotgun pleading if it is so confused, ambiguous, vague, or otherwise unintelligible that its true

substance, if any, is well disguised." <u>Fike v. Glob. Pharma Healthcare Priv., Ltd.</u>, 741 F. Supp. 3d 265, 272 (E.D. Pa. 2024).

II

Plaintiffs are a multiemployer pension plan and its trustees.  They allege that the pension plan was established to provide retirement benefits to eligible participants and beneficiaries.  As part of collective bargaining agreements with Ironworkers Local No. 852 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers, defendant Pencoyd agreed to participate in and contribute to the pension plan.

Defendant Pencoyd is a corporation incorporated in Pennsylvania with an office registered in Wayne, Pennsylvania. James Heldring was the president of Pencoyd.  Pencoyd's operations took place at 4 School Lane in Folcroft, Pennsylvania.

Sometime in the fall of 2024, Pencoyd notified plaintiffs orally and in writing that it planned to cease its fabrication operations.  On January 27, 2025, plaintiffs demanded that Pencoyd, beginning on March 1, 2025, make 119 payments totaling $327,154 towards its withdrawal liability. Pencoyd has not made any payments.

-4-

On March 7, 2025, plaintiffs sent Pencoyd a request for information to determine whether any other entities were under common control with Pencoyd. Pencoyd failed to respond within thirty days as required by 29 U.S.C. § 1399(a).

Three entities, 2 School Lane LLC, 4 School Lane LLC, and J. Alexander Properties LLP, also have registered offices at Pencoyd's Wayne, PA address. J. Alexander Properties LLP owns the real property located at 2 School Lane in Folcroft. Because 2 School Lane LLC is a general partner of J. Alexander Properties LLP, it has an indirect ownership interest in that location.

J. Alexander Properties LLP also owns the real property located at 4 School Lane in Folcroft, which, as noted above, was the site of Pencoyd's operations. According to the Amended Complaint, the president of Pencoyd, James Heldring, has previously been seen at this location. As noted, plaintiffs assert that defendants James Heldring, J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC, as part of the controlled group of Pencoyd, are also liable for the payments due.

On July 3, 2025, plaintiffs filed suit against defendant Pencoyd. In its answer to the initial complaint, Pencoyd conceded that it was "no longer an active business

-5-

entity." Pencoyd further pleaded that it sought to withdraw from the pension plan because Pencoyd was no longer operating.

Five months later, plaintiffs amended their complaint to add James Heldring, 2 School Lane LLC, 4 School Lane LLC, and J. Alexander Properties LLP as parties.[1] Plaintiffs bring claims against the defendants for "Collection" and "Collection Based on Veil Piercing," in part seeking full and accelerated payment of the withdrawal liability.

### III

Defendants first argue that plaintiffs lack standing by failing to allege that Pencoyd made a complete or partial withdrawal from the pension plan. Under 29 U.S.C. § 1383(a), an employer is deemed to have completely withdrawn from the pension plan when it either "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

In paragraph twenty-seven of the first Amended Complaint, plaintiffs allege that "[i]n fall 2024, Pencoyd

---

[1] Plaintiffs also added Master Builders and Erectors (a New Jersey Corporation) and Master Builders and Erectors (a Pennsylvania Corporation) as defendants. These defendants have not been served and are not parties to this pending motion. On June 3, 2026, the court dismissed them without prejudice for failure to prosecute (Doc. #34). Count II of the Amended Complaint alleges only that these two defendants are successors to Pencoyd and are jointly and severally liable for the withdrawal liability. Because these parties have been dismissed, Count II will be dismissed as well.

notified [plaintiffs], orally and in writing, of its planned cessation of its fabrication operations." Significantly, in paragraph five of its answer to plaintiffs' original complaint, Pencoyd admitted that it "is no longer an active business entity." It also admitted, in paragraph twelve of its answer, it "sought to withdraw from the union and the pension plan. This was because Pencoyd was closing and would no longer operate." Under the circumstances, plaintiffs have plausibly alleged that they have a valid claim of withdrawal liability against Pencoyd.

Defendants also argue that the trustees of the pension plan have failed to adequately allege that they have standing. However, the Amended Complaint references the trust agreement and pension plan documents, and the court may consider them when reviewing a facial attack on jurisdiction. Const. Party of Pa., 757 F.3d at 358. These documents provide that the trustees "have the exclusive right, power and authority, in their sole discretion, to administer the [pension plan]" and have all powers necessary to "commence or defend legal proceedings." Plaintiffs have stated the precise damages allegedly suffered because of defendants' failure to pay the withdrawal liability, and a decision in plaintiffs' favor would redress this alleged injury. See Lujan, 504 U.S. at 560-61. The trustees have plausibly pleaded that they have standing to bring their claims.

-7-

IV

Three defendants, J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC, next assert that the first Amended Complaint fails as to them because plaintiffs have not sufficiently pleaded that they are part of the controlled group of Pencoyd. The MPPAA, an amendment to ERISA, extends liability to "trades or businesses (whether or not incorporated) which are under common control" with a withdrawing employer like Pencoyd. 29 U.S.C. §§ 1301(b)(1), 1381(a). The MPPAA does not state what constitutes a "trade or business" that is "under common control." It authorizes the Pension Benefit Guaranty Corporation to define "common control" in a manner "consistent and coextensive with" regulations promulgated by the Treasury Department under 26 U.S.C. § 414(b)-(c). See 29 U.S.C. § 1301(a)(14); see also Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila., 830 F.2d 1241, 1244 n.2 (3d Cir. 1987). The Treasury regulations define entities under common control as those either linked by a parent corporation or a group of five or fewer individuals who control a certain percent of a company's voting shares or profits. 26 U.S.C. § 1563(a). These control group regulations have been applied to limited liability corporations and limited partnerships. See, e.g., Steelworkers Pension Tr. by Bosh v. Renco Grp., Inc., 694 F. App'x 69, 71-73 (3d Cir. 2017); GCIU-Emp. Ret. Fund v. Harvard Press, Inc., No.

-8-

CV 16-1074, 2020 WL 2060291, at *6 (D.N.J. Apr. 28, 2020); Cent. Pa. Teamsters Pension Fund v. Waggoner, No. 5:20-CV-05560-JMG, 2022 WL 17721073, at *1, *11 (E.D. Pa. Dec. 15, 2022).

Even assuming that these defendants are "trades or businesses" subject to liability, plaintiffs have not sufficiently alleged that they and Pencoyd were under common control.  Plaintiffs allege that J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC share the same address as Pencoyd.  J. Alexander Properties LLP owns the real properties at 2 School Lane and 4 School Lane, and Pencoyd used to operate at 4 School Lane.  The Amended Complaint, however, does not allege that Heldring, or any identified groups or companies control voting shares or profits of Pencoyd, J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC. Pencoyd's presence at these real properties does not lead to any inferences as to common control.  As a result, plaintiffs have failed to plead sufficiently that J. Alexander Properties LLP, 2 School Lane LLC, and 4 School Lane LLC are part of a control group with Pencoyd.  The claims against these three defendants will be dismissed.[2]

---

2    Plaintiffs also appear to bring alter ego and veil piercing claims against these defendants.  Under the MPPAA, a party cannot bring a veil piercing claim against a corporate defendant, because it overlaps with the common control provisions of the MPPAA.  See Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 533-34 (E.D. Pa. 2005).  While an alter ego

Defendant James Heldring, the president of Pencoyd, also argues that plaintiffs have failed to sufficiently plead that he is part of the controlled group.  The MPPAA's "common control" provision does not apply to individuals.  Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 534 (E.D. Pa. 2005); Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc., No. CV 02-7825, 2011 WL 1135944, at *13 (E.D. Pa. Mar. 24, 2011).  However, withdrawal liability under the MPPAA can be extended to individual officers if they can be considered sole proprietors or be reached through a veil piercing theory.  See Brown, 385 F. Supp. 2d at 528, 532, 534.  Plaintiffs allege sufficient facts to support a veil piercing theory as a result of Heldring's position with Pencoyd.  Defendant Heldring also maintains that this controlled group liability only applies to single employer plans and not to multi-employer plans to which Pencoyd was a party.  He is incorrect.  See e.g., Cent. States, Se. and Sw. Areas Pension Fund v. Laguna Dairy, S. De R.L. De C.V., 132 F.4th 672 (3d Cir. 2025); Steelworkers Pension Tr. by Bosh v. Renco Grp., Inc., 694 F. App'x 69, 71-72 (3d Cir. 2017).

---

claim under the MPPAA can be brought against corporate defendants, the sole fact that these defendants share the same address as Pencoyd is insufficient.  See id. at 531-33.

V

Defendants further assert that the first Amended Complaint should be dismissed under Rule 12(b)(6) for failure of plaintiffs to allege compliance with certain notice and arbitration provisions of ERISA and the amendments made thereto by the MPPAA or stayed pending arbitration.  They allege that plaintiffs did not provide proper notice of the demand for withdrawal liability, which is a prerequisite to making a claim for withdrawal liability.  See 29 U.S.C. § 1399(b)(1). Defendants argue that "at a minimum" the matter should be stayed pending arbitration mandated by the MPPAA.  See 29 U.S.C. § 1401(a).

According to the well-pleaded facts in the Amended Complaint, plaintiffs, on January 27, 2025, sent to Pencoyd a demand for payment of withdrawal liability which included the amount of the liability and the schedule for liability payments as required under 29 U.S.C. § 1399(b)(1).  See also Cent. States, Se. and Sw. Areas Pension Fund, 132 F.4th at 682. Notifying one member of a controlled group suffices to notify all members.  See id. at 681.  Plaintiffs have plausibly pleaded notice to defendants.

Pursuant to 29 U.S.C. § 1401(a)(1), the parties may jointly initiate arbitration within 180 days of the date of the plan sponsor's demand for payment.  Plaintiffs notified

defendants on January 27, 2025.  Thus, the parties could have jointly requested arbitration up until July 26, 2025.

Alternatively, a longer period of time to initiate arbitration proceedings may be triggered if an employer requests that the plan sponsor review its withdrawal liability.  See 29 U.S.C. § 1401(a)(1).  An employer has ninety days from the day it receives the plan sponsor's notice to request that review. 29 U.S.C. § 1399(b)(2)(A).  Any of the parties may initiate arbitration proceedings within sixty days after either the plan sponsor responds to the employer's review request or 120 days after an employer requests review, whichever is earlier.  29 U.S.C. § 1401(a)(1)(A)-(B).  The latest a party could have unilaterally initiated arbitration was October 24, 2025.

The statute further provides that:

> "[i]f no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor.  The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection."

29 U.S.C. § 1401(b)(1).

There is no allegation that Pencoyd ever requested that the plaintiffs review its withdrawal liability.  In addition, the parties agree in their briefing that no one has initiated arbitration, either jointly or otherwise.  The time

-12-

allowed to initiate arbitration has since expired.  As a result, pursuant to 29 U.S.C. § 1401(b)(1), the plaintiffs were permitted to bring an action in this court to collect what is "due and owing."

VI

Defendants also move to dismiss the Amended Complaint pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure.  They argue that the Amended Complaint is a "shotgun pleading" because it contains multiple claims that adopt the allegations of all preceding counts and fails to specify which defendant is responsible for which acts or omissions.  The Amended Complaint describes in detail specific allegations and facts pertaining to Pencoyd and Heldring, the remaining defendants.  It is not "so confused, ambiguous, vague, or otherwise unintelligible" to require dismissal. See Fike, 741 F. Supp. 3d at 272.